UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § | |
| vs. | § § | CIVIL ACTION NO. H-12-cv-01691 |
| INNOVATIVE MARKETING STRATEGIES, INC., | § § § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.**

Before the Court is the defendant's, Innovative Marketing Strategies, Inc. ("IMS"), motion to dismiss the plaintiff's, American General Life Insurance Company ("AGL"), suit for lack of personal jurisdiction, or alternative, motion to transfer the case to the Central District of California, pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 5).  AGL has filed a response to IMS's motion (Dkt. No. 10) and the matter is ripe for adjudication.  The Court, having reviewed the parties' submissions, the pleadings and the applicable law, is of the opinion that IMS's motion should be DENIED.

**II.**

The relevant facts are, by and large, undisputed.  AGL entered into an Independent Marketing Organization Agreement ("IMO") with IMS to "conduct business with respect to AGL's life insurance products by producing business", *i.e.,* sales of life insurance policies and by recruiting other representatives to sell AGL life insurance products.  It appears that, during the course of the Agreement, IMS did not sell AGL life insurance policies, but was instrumental in getting other representatives, such as DesignLife Insurance Services LLC, ("DesignLife")  to sell

1 / 7

AGL policies.  For its part, IMS earned an "override" commission based on the products sold by its representatives.  This dispute concerns 48 insurance policies sold by DesignLife that lapsed in the first year due to non-payment of the premiums.  DesignLife did not return the commissions paid by AGL on the policies; hence, AGL obtained a default judgment against it.  Although IMS returned the "override" commissions paid to it by AGL, it denies that it is liable for Design Life's unrefunded commissions.

## III.

IMS is a California corporation and AGL is a Texas corporation.  As a result, IMS has raised two threshold issues in its motion to dismiss or transfer.  First, IMS asserts that AGL's suit should be dismissed for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  IMS asserts that it has not availed itself of the benefits and protections of the state of Texas through minimum contacts; therefore, the exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice.  In this regard, IMS cites to *McFadin v. Gerer*, 587 F.3d 753, 759 (5th Cir. 2009).  Second, IMS asserts that, alternatively, venue is improper in the Southern District of Texas.  Specifically, it argues that the suit should be transferred to the Central District of California for the convenience of the parties and witnesses and in the interest of justice and fair play.  *See* 28 U.S.C. § 1404(a).

Because AGL's suit could have been brought in California, venue is governed by 28 U.S.C. 1391, permitting the Court to transfer the case to a district where any defendant resides, especially when a substantial part of the events giving rise to the dispute occurred in the transferee district.  In support of its transfer argument, IMS cites to *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312  (5th Cir. 2008).  AGL asserts that DesignLife operated under the jurisdiction of IMS and was, in one respect, its agent.  And, because DesignLife operated under

the jurisdiction of IMS, it is liable for and obligated to refund to AGL, the unearned commissions owed by DesignLife.

## IV.

### A.

Since IMS has challenged AGL's claim of personal jurisdiction in Texas, AGL bears the burden of establishing this Court's jurisdiction over IMS.  *See Quick Technologies, Inc. V. Sage Group PLC*, 313 F.3d 338, 343  (5th Cir. 2003).  In this regard, IMS must establish a *prima facie* case for personal jurisdiction, and may do so by appropriate documents, affidavits and/or discovery.  *Id.* (citing *Thompson v. Chrysler Motors Corp*., 755 F.2d 1162, 1165  (5th Cir. 1985)); *see also* Fed. R. Civ. P. 4(h)(2).  Assuming that IMS establishes a *prima facie* case, the burden of persuasion shifts to AGL to establish a compelling case that other considerations would render the exercise of jurisdiction unreasonable.  *See Safe Group PLC*, 313 F.2d at 343; *see also Calianno v. Distinctive Brands, Inc.,* No. H-12-435, 2012 WL 1228088, at *2 (S.D. Tex. Mar. 22, 2012) (citing *Bullion v. Gillespie*, 895 F.2d 213, 216 - 17  (5th Cir. 1990).

In the case at bar, AGL relies on the Texas long-arm statute as the basis for the Court's exercise of personal jurisdiction over IMS.  *See* Tex. Civ. Prac. & Rem. Code § 17.042.  Texas' long-arm statute permits Texas courts to exercise jurisdiction over non-resident defendants that "do business" in Texas.  Doing business in Texas may be established by showing that:  (a) the defendant established minimum contacts with the state of Texas; and (b) the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice.  *See IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007)(internal citations omitted). Minimum contacts require purposeful availment, whereby a defendant purposefully avails itself of the privileges of conducting activities within Texas.  *Id.*

The evidence presented by AGL shows IMS entered into an IMO with AGL on January 1, 1999.  Under the terms of the Agreement, IMS was permitted to sell insurance products to AGL's customers as a "writing agent" and/or recruit agents to operate under IMS's jurisdiction. With regard to the agents or representatives recruited, IMS generally submitted their applications for appointment to AGL, assisted in processing the agent's paperwork, assisted with submitting customer insurance applications to AGL, communicated AGL's expectations to IMS's agents, and agreed to indemnify and hold harmless AGL from any loss related to commissioned-based liabilities of its agents.

The nature and extent of IMS's relationship with AGL may be best characterized as an ongoing interdependent relationship.  IMS was responsible for assuring the performance and quality of work that its agents produced in relation to AGL's products.  In doing so, IMS conducted the business of AGL in AGL's behalf and, in turn, received an "override" commission.  Moreover, the nature and extent of the Agreement between IMS and AGL contemplated a continuing and ongoing relationship.  In this regard, IMS reached out to AGL seeking to be appointed an *agent* of AGL, taking advantage of AGL's nationwide organization. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 - 80 (1985).

IMS asserts that its contacts with AGL were minimal in that it occasionally forwarded paperwork to Texas.  This assertion fails to relieve IMS of exposure because the Agreement between the parties, coupled with AGL's Compliance Manual, envisioned that IMS would act as AGL in relation to its representatives.  For example, IMS was authorized to receive money in behalf of AGL, make settlements and payments to AGL from time to time and under certain circumstances.  Finally, IMS agreed to choice of law provisions  providing that Texas law applies to any disputes between AGL and IMS.  While agreeing to a choice of law provision

does not waive IMS's personal jurisdiction contention, it does speak to IMS's awareness that Texas law dictates the parties' relationship.  Based on the long-term interdependent relationship between the parties, the Court concludes that IMS should have reasonably anticipated being haled into a court of the plaintiff's choosing.  *Burger King,* 471 U.S. at 475.

The Court is also of the opinion that the exercise of jurisdiction over IMS does not offend traditional notions of fair play and substantial justice.  *See Griego*, 221 S.W.3d at 596.  Nothing in IMS's pleadings suggests that litigation in California would provide a field of litigation more balanced or convenient than Texas.  Except for the trial of the case, the costs and convenience of pretiral preparation is equally distributed between the two states.  The Court is of the opinion that the forum state's interest in regulating and resolving controversies concerning its licensed insurers outweighs IMS or the state of California's interest in this matter.  IMS has failed to establish otherwise.

## B.

In the alternative, IMS asserts that this case should be transferred to the Central District of California.  A motion to transfer venue from one district court to another is governed by 28 U.S.C. § 1404(a).  Specifically, § 1404(a) gives a federal court discretion to "transfer any civil action to any other district or division where it might have been brought" if to do so would be convenient for the parties and witnesses and "in the interest of justice."  28 U.S.C. § 1404(a).  "[T]he purpose of [this] section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585,* 364 U.S. 19, 26 - 27 (1960)); *see also Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp.2d 786, 789 (S.D. Tex. 2005).  The movant, however, bears the burden of proving that a transfer is

necessary.  *Spiegelberg*, 402 F. Supp.2d at 789; *see also Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).

   The first issue that a district court must consider in evaluating a motion under § 1404(a) "is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049, 124 S. Ct. 826, 157 L. Ed.2d 698 (2003); *see also In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). Next, a district court must consider the issue of "the convenience of the parties and witnesses" which "turns on a number of private and public interest factors, none of which are given dispositive weight."  *In re Volkswagen AG*, 371 F.3d at 203 (citations omitted); *see also Amini Innovation Corp. Bank & Estate Liquidators, Inc.*, 512 F. Supp.2d 1029, 1043 (S.D. Tex. 2007).

   The Court is of the opinion that IMS has established that a transfer to another forum is not necessary or proper.  Relying on AGL's pleading, the Court determines that AGL has satisfied its burden to show that Texas is a proper forum.  IMS asserts only that venue should be the Central District of California because it "is significantly more convenient" for the parties and better serves the interest of justice.  Beyond that argument, IMS fails to present facts that support transfer.  Noteworthy is the fact that documents unique to DesignLife are present in California and do not impact convenience from IMS's perspective.  The taking of the depositions of DesignLife's officials appear to be more of an inconvenience for AGL than IMS.  The relevant personnel are residents of California.  Hence, except for the depositions of AGL officials and a potential trial in Texas, the  costs and inconvenience to the parties are balanced, favoring IMS. Therefore, whether the case remains in the forum state or is transferred to the state of California, the  costs  associated  with  pretrial  preparation  is  inconsequential  from  IMS's  perspective.

Moreover, any discovery documents concerning AGL's suit against DesignLife are already in AGL's possession and readily available to IMS.  Therefore, discovery factors do not favor transfer.

Nor does the costs associated with the presence of witnesses for trial favor transfer. There is no proffer of a list of witnesses, whose testimony is relevant to the issues presented by this suit, that are beyond the reach of the Court or IMS.  As it relates to access to the evidence, delay, prejudice, court congestion, local interest governing law and conflict of laws, the Court is of the opinion that the evidence fails to favor a transfer.  In fact, there is no substantial evidence that these factors preponderate at all, particularly in the face of AGL's choice of a proper forum. Therefore, IMS's motion for a transfer should be DENIED.

**V.**

Based on the foregoing analysis and discussion, the Court determines that IMS's motion to dismiss or, alternatively, to transfer this case should be, and is hereby, DENIED.

It is so ORDERED.

SIGNED at Houston, Texas this 26th day of September, 2012.

_____
Kenneth M. Hoyt
United States District Judge